# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| O. DOE; BRAZILIAN WORKER CENTER, INC.; LA COLABORATIVA,<br><br>                   Plaintiffs,<br><br>                   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; U.S. SOCIAL SECURITY ADMINISTRATION; MARCO RUBIO, in his official capacity as Secretary of State; MICHELLE KING, in her official capacity as Acting Commissioner of U.S. Social Security Administration,<br><br>                   Defendants. | Civil Action No. 25-CV-10135 |

## DECLARATION OF LEON RODRIGUEZ

I, Leon Rodriguez, declare and state as follows:

1. Throughout my career, I have gained personal knowledge of how birthright citizenship is critical to many different facets of American life. The experience from which I draw for this declaration includes my work as a federal prosecutor; my service as the County Attorney for Montgomery County, Maryland; and my experience as the Director of the United States Citizenship and Immigration Services.

**Background**

2. I am an attorney licensed to practice law in the District of Columbia, Maryland, and New York. I began my career as a prosecutor, first in Brooklyn, New York (1988-1994); then

at the U.S. Department of Justice in Washington, D.C. (1994-1997); and then as an Assistant U.S. Attorney in Pennsylvania (1997-2001). One of my main focus areas in my work as a prosecutor was healthcare. I later worked as the Chief of Staff, Deputy Assistant Attorney in the Civil Rights Division of the Department of Justice (January 2010-September 2011) and as the Director of the U.S. Department of Health and Human Services, Office for Civil Rights (2011-2014).

3. From 2014 to 2017, I served as the Director of the United States Citizenship and Immigration Services (USCIS).

4. I am currently a partner at Seyfarth Shaw LLP, where I am a founding member of the firm's Immigration and Compliance specialty

### Eliminating Birthright Citizenship On February 19, 2025 Would Result In Chaos

5. I am aware that on January, 20, 2025, President Trump issued an Executive Order entitled "Protecting the Meaning and Value of Am things, the EO states that it shall be the policy of the United States that no federal agency shall issue documents recognizing U.S. citizenship to certain categories of people who heretofore have been recognized as citizens by virtue of their birth in the United States. This includes a person born in the United States "wh whose presence is "lawful but temporary" a permanent resident.

6. The EO states that it shall apply to people born within the United States after 30 days from the date of the order (February 19, 2025).

7. If the EO were allowed to go into effect on that date, it would immediately cause significant disruption and chaos throughout many different facets of American life. That

2

is because we as a nation have built up numerous different systems that are designed on the foundational premise that a birth certificate reflecting birth within the United States constitutes proof of U.S. citizenship. Birthright citizenship underpins our daily life in ways that most people scarcely think about, because it has been taken as a given for generations. Removing that fundamental premise on February 19, 2025 would wreak havoc in many different ways.

8. Starting at the most basic level, there is currently no other immigration status for the babies whose citizenship would no longer be recognized under the EO. Babies who are born after February 19, 2025 and fall into the categories listed in the EO would therefore have no immigration status at all. We simply do not have any legal structures in place in the United States to recognize such babies as anything other than U.S. citizens.

9. The resulting disruption would be immediate and severe. All of the babies who fall into the categories listed in the EO—a number that would grow daily—would become instantly deportable by virtue of having no recognized immigration status in the United States. Many would be rendered stateless, because they would also have no ties to any other country.

10. Moreover, parents would have no way of adj Because our entire immigration system has developed over the last century (and more) on the foundational premise that such children are U.S. citizens, there is no mechanism for adjustment of their status. This would cause immense problems, not just for children but for parents put in a position of trying to navigate their family through this void.

11. Although the chaos and disruption would fall most heavily on the families of children specifically listed in the EO, it would extend across all of American society. For example,

3

there is currently a relatively seamless cooperation between hospitals (where births are recorded) and federal agencies that recognize immigration status. Through the Enumeration At Birth (EAB) program, parents who have just had a baby can sign a simple form while still in the hospital, authorizing the hospital to report that information to the Social Security Administration (SSA) for issuance of a Social Security number and card.[1] SSA reports that approximately 99% of all new parents do this.

12. The EO would change all that—not just for undocumented individuals but for everyone. Even in the case of a baby born to two U.S. citizen parents, a birth certificate reflecting a birth within the United States would no lo[nger suffice;] parents would have to prove their own status first. Even if it were deemed acceptable for citizen-parents to do so by producing their own birth certificates (which would appear illogical, if that does not serve as proof for individuals born after February 19, 2025), that would be an extraordinarily cumbersome process compared to what exists today.

13. Moreover, it is not clear to whom they would produce those documents: to the hospitals where their ch[ild was born] (which have no training or ability to manage such a process)? To the local jurisdiction where their child was born? To the one where they reside? The state? To a federal agency? There does not currently exist in the United States a centralized database of U.S. citizens. Even if one could be created, and a process for determining who goes into it, that most certainly could not be accomplished within 30 days. Thousands of people would be required to hire immigration attorneys to help with this process, at immense burden and cost.

---

[1] *See* Bureau of Vital Statistics, State Processing Guidelines for Enumeration at Birth (Social Security Administration Nov. 2024), available at
https://www.ssa.gov/dataexchange/documents/Updated%20State%20Processing%20Guidelines%20for%20EAB.pdf

14. That is just one example of the chaos and disruption that would occur if the EO were allowed to go into effect on February 19, 2025. Many other facets of American life are similarly built upon the foundational premise that a birth certificate reflecting birth in the United States serves as proof of U.S. citizenship. Passports, employment authorization, drivers licenses, public benefit programs: the processes for accessing all of these benefits and entitlements have been designed and operated over the last century based on the premise that a birth certificate reflecting birth in the United States is proof of citizenship. If that premise is removed, then those systems will become instantly unmanageable and unworkable. And there is nothing in place to replace them. This harms not just the children directly affected, but whole families: if a child loses access to healthcare benefits, for example, parents will be put in the position of trying to secure alternative care—or managing the problematic health outcomes that result for their child if alternative care cannot be secured.

15. In the United States, birthright citizenship has been in place for generations and has been relied upon by federal, state, and local agencies in creating systems that underpin many facets of our daily lives. Whether or not such entrenched systems could ever be replaced by ones that do not rely on birthright citizenship, this most certainly cannot be done by February 19, 2025. Allowing the EO to go into effect on that date would therefore cause significant disruption and harm in numerous different ways.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 23rd day of January 2025 in Washington, D.C.

*/s/ Leon Rodriguez*