## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| O. DOE; BRAZILIAN WORKER CENTER, INC.; LA COLABORATIVA, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; U.S. SOCIAL SECURITY ADMINISTRATION; MARCO RUBIO, in his official capacity as Secretary of State; MICHELLE KING, in her official capacity as Acting Commissioner of U.S. Social Security Administration, <br><br> Defendants. | Civil Action No. 25-10136-LTS |

### DECLARATION OF FIONA S. DANAHER, M.D., M.P.H.

I, Fiona S. Danaher, M.D., M.P.H., make the follow declaration based on my personal knowledge and declare under the penalty of perjury that the follow is true and correct:

1.  I am a pediatrician with over 12 years of experience working with children and families. I graduated from Mount Sinai School of Medicine in New York with M.D. and M.P.H. degrees in 2012.  I completed my pediatric residency at Massachusetts General Hospital for Children in 2015. My residency training included extensive experience interviewing and conducting physical exams of children and adolescents to treat both medical and psychiatric conditions.

2.  I have been board certified and fully licensed as a pediatrician in the state of Massachusetts since 2015.  Since then I have been working as a primary care pediatrician at MGH Chelsea Pediatrics, where a substantial proportion of my work

focuses on the care of children in immigrant families. I also worked for 7 years as a child abuse pediatrician for Massachusetts General Hospital.

3. Since 2020, I have directed the MGH Center for Immigrant Health, which serves as a hub to foster excellence in clinical care, education, advocacy and research to improve the health and wellbeing of immigrants.

**Health Outcomes Tied to Citizenship**

4. A growing body of scientific literature demonstrates that policies of exclusion based on immigration status harm children in immigrant families by directly and indirectly diminishing access to public benefits such as healthcare, nutrition, and educational opportunities, while promoting bullying, fear, and chronic stress.[1,2]

5. Decreased access to healthcare is one of the best studied impacts. Income-eligible children whose immigration status bars eligibility for public health insurance programs are uninsured at more than seven times the rate of comparable children with U.S. citizenship.[3] Lack of insurance renders healthcare cost-prohibitive, leading to lower preventive healthcare utilization and delays in needed medical

---

[1] Crookes DM, Stanhope KK, Kim YJ, Lummus E, Suglia SF. Federal, State, and Local Immigrant-Related Policies and Child Health Outcomes: a Systematic Review. J Racial Ethn Health Disparities. 2022 Apr;9(2):478-488. doi: 10.1007/s40615-021-00978-w. Epub 2021 Feb 8. PMID: 33559110; PMCID: PMC7870024.

[2] Perreira KM, Pedroza JM. Policies of Exclusion: Implications for the Health of Immigrants and Their Children. Annu Rev Public Health. 2019 Apr 1;40:147-166. doi: 10.1146/annurev-publhealth-040218-044115. Epub 2019 Jan 2. PMID: 30601722; PMCID: PMC6494096.

[3] Lacarte V. 2022. Immigrant Children's Medicaid and CHIP Access and Participation: A Data Profile. Washington, DC: Migration Policy Institute. https://www.migrationpolicy.org/sites/default/files/publications/mpi_chip-immigrants-brief_final.pdf

and dental care for non-citizen children, with particular disparities noted in states

that have not extended public insurance eligibility to undocumented children.[4,5,6,7]

6.  Multiple studies have found that the upfront costs of public insurance programs

for children are recouped in adulthood through decreased emergency room

utilization and hospitalizations, lower mortality, increased educational attainment

and increased wage income leading to higher tax contributions.[8,9,10] The American

Academy of Pediatrics thus recommends that Medicaid and CHIP eligibility be

extended to all children, regardless of immigration status.[11]

## Effects of Executive Order Eliminating Birthright Citizenship

7.  Eliminating birthright citizenship would not only expand the population of

undocumented children with reduced access to healthcare in the U.S.; it would

create a new, more vulnerable subpopulation of stateless children with no

domestic or foreign government charged to protect their rights and wellbeing. As

---

[4] Pillai D, Artiga S, Hamel L, et al. Health and health care experiences of immigrants: The 2023 KFF/LA Times survey of immigrants. KFF. Published September 17, 2023. https://www.kff.org/racial-equity-and-health-policy/issue-brief/health-and-health-care-experiences-of-immigrants-the-2023-kff-la-times-survey-of-immigrants/
[5] Blewett LA, Johnson PJ, Mach AL. Immigrant children's access to health care: differences by global region of birth. J Health Care Poor Underserved. 2010 May;21(2 Suppl):13-31. doi: 10.1353/hpu.0.0315. PMID: 20453374; PMCID: PMC3174684.
[6] Rosenberg J, Shabanova V, McCollum S, Sharifi M. Insurance and Health Care Outcomes in Regions Where Undocumented Children Are Medicaid-Eligible. Pediatrics. August 2022; 150 (3): e2022057034. 10.1542/peds.2022-057034
[7] Jewers M, Ku L. Noncitizen Children Face Higher Health Harms Compared With Their Siblings Who Have US Citizen Status. Health Affairs. 2021;40(7):1084-1089. doi:https://doi.org/10.1377/hlthaff.2021.00065
[8] Brown DW, Kowalski AE, Lurie IZ. Long-Term Impacts of Childhood Medicaid Expansions on Outcomes in Adulthood. The Review of Economic Studies. 2019;87(2):792-821. doi:https://doi.org/10.1093/restud/rdz039
[9] Wherry LR, Miller S, Kaestner R, Meyer BD. Childhood Medicaid Coverage and Later-Life Health Care Utilization. Rev Econ Stat. 2018 May;100(2):287-302. doi: 10.1162/REST_a_00677. Epub 2018 May 4. PMID: 31057184; PMCID: PMC6497159.
[10] Goodman-Bacon A. The Long-Run Effects of Childhood Insurance Coverage: Medicaid Implementation, Adult Health, and Labor Market Outcomes. American Economic Review. 2021;111(8):2550-2593. doi:https://doi.org/10.1257/aer.20171671
[11] Kusma JD, Raphael JL, Perrin JM, Hudak ML. Medicaid and the Children's Health Insurance Program: Optimization to Promote Equity in Child and Young Adult Health. Pediatrics. 2023;152(5). doi:https://doi.org/10.1542/peds.2023-064088

described by the U.S. Department of State, people who are stateless "have no legal protection and no right to vote, and… often lack access to: education; employment; health care; registration of birth, marriage, or death and property rights. Stateless people may also encounter travel restrictions, social exclusion, and heightened vulnerability to sexual and physical violence, exploitation, trafficking in persons, forced displacement, and other abuses."[12] The estimated 10 million stateless individuals living worldwide tend to experience worse health outcomes and shorter lifespans, prompting the U.S. to join the Global Alliance to End Statelessness and pledge at the UNHCR- convened 2019 High-Level Segment on Statelessness to "engage in strong U.S. diplomacy to advocate for the prevention and reduction of statelessness and to provide U.S. humanitarian assistance to help protect stateless persons."[13] The U.S. Department of State has called on other nations to eliminate "discrimination in nationality laws and practice" and to strengthen political will to address "gaps in national laws that are causing statelessness."[14]

8. Statelessness eliminates not just "social citizenship" but also "medical citizenship,"[15] and the harmful effects of eliminating birthright citizenship would extend beyond the stateless children to U.S. citizens. In "mixed-status" immigrant families, for example, U.S. citizen children with non-citizen siblings are less likely to have health insurance or a usual source of care, are more likely to utilize

---

[12] Statelessness - United States Department of State. United States Department of State. Published January 16, 2025. Accessed January 20, 2025. https://www.state.gov/statelessness
[13] Ibid.
[14] Ibid.
[15] Kingston LN, Cohen EF, Morley CP. Debate: Limitations on universality: the "right to health" and the necessity of legal nationality. *BMC International Health and Human Rights*. 2010;10(1). doi:https://doi.org/10.1186/1472-698x-10-11

emergency departments for care, and are less likely to receive the routine schedule of preventive care measures recommended by the American Academy of Pediatrics and American Academy of Pediatric Dentistry.[16] Children who do have public or private insurance are less likely to have a usual source of care if they have an uninsured sibling.[17]

9. The chilling effects of restrictive anti-immigrant policies extend beyond directly affected families, with declines in public health insurance enrollment noted even in immigrant families where all children are U.S. citizens.[18] Such chilling effects can also decrease utilization of other important public benefits with no immigration status requirements, such as the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC).[19] Unmet basic needs have been shown to drive up emergency room, urgent care, and mental health visits among children.[20]

10. Data from the National Health Interview Survey demonstrate that children from marginalized/minoritized racial backgrounds, who are heavily represented among both children enrolled in public health insurance programs and children in immigrant families, already experience more limited access to healthcare and are

[16] Hudson JL, Abdus S. Coverage And Care Consequences For Families In Which Children Have Mixed Eligibility For Public Insurance. *Health Affairs*. 2015;34(8):1340-1348. doi:https://doi.org/10.1377/hlthaff.2015.0128
[17] Percheski C, Bzostek S. Health insurance coverage within sibships: Prevalence of mixed coverage and associations with health care utilization. *Soc Sci Med*. 2013;90:1-10. doi:https://doi.org/10.1016/j.socscimed.2013.04.021
[18] Twersky SE. Do state laws reduce uptake of Medicaid/CHIP by U.S. citizen children in immigrant families: evaluating evidence for a chilling effect. *Int J Equity Health*. 2022;21(50):1-14. doi:https://doi.org/10.1186/s12939-022-01651-2
[19] Vargas ED, Pirog MA. Mixed-Status Families and WIC Uptake: The Effects of Risk of Deportation on Program Use. *Social Science Quarterly*. 2016;97(3):555-572. doi:https://doi.org/10.1111/ssqu.12286
[20] Black LI, Ng AE, Zablotsky B. Stressful life events and healthcare utilization among U.S. children aged 2–17 years. National Health Statistics Reports; no 190. Hyattsville, MD: National Center for Health Statistics. 2023. DOI: https://dx.doi.org/10.15620/cdc:130311.

less likely to report excellent or very good health compared to white, non-Hispanic children.[21] The health burdens of statelessness would further exacerbate existing racial inequities in pediatric health outcomes, not only among directly affected children, but among U.S. citizen children as well.

Signed under pains and penalty of perjury, this 20th day of January 2025.

_____
Fiona S. Danaher, M.D., M.P.H., F.A.A.P.

---

[21] Brooks T, Gardner A. *Snapshot of Children with Medicaid by Race and Ethnicity, 2018*. Georgetown University McCourt School of Public Policy Center For Children and Families; 2020. Accessed January 20, 2025. https://ccf.georgetown.edu/wp-content/uploads/2020/07/Snapshot-Medicaid-kids-race-ethnicity-v4.pdf