IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| O. DOE; BRAZILIAN WORKER CENTER, INC.; LA COLABORATIVA,<br><br>                        Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; U.S. SOCIAL SECURITY ADMINISTRATION; MARCO RUBIO, in his official capacity as Secretary of State; MICHELLE KING, in her official capacity as Acting Commissioner of U.S. Social Security Administration,<br><br>                        Defendants. | Civil Action No. 25-10135-LTS |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**
**Leave to file granted on 1/29/25**

Defendants attempt to make the central issue in this case a complicated one, but it is not. Birthright citizenship is written explicitly into the Constitution; it has been authoritatively endorsed by the Supreme Court, consistently applied for years by federal courts and federal agencies, and codified into statute. It cannot be changed by Executive Order.

With frequent illogical leaps, Defendants try to evade the clear holding of *U.S. v. Wong Kim Ark*, 169 U.S. 649 (1898): that anyone born on U.S. soil is an American citizen, subject only to rare and well-defined exceptions. Defendants' main argument to the contrary hinges on *Elk v. Wilkins*, 112 U.S. 94 (1884), which concerned the application of the Citizenship Clause to Native American tribes. But *Elk* does nothing to assist Defendants. Fourteen years after it was decided, the *Wong Kim Ark* Court explicitly held that *Elk* is the exception that proves the rule—detailing how Indian tribes were considered "alien nations," 169 U.S. at 681, and then describing the Citizenship Clause's "real object" as: "to exclude, by the fewest and fittest words (besides children of members of the Indian tribes, standing in a peculiar relation to the national government, unknown to the common law), the two classes of cases,—children born of alien enemies in hostile occupation, and children of diplomatic representatives of a foreign state…." *Id.* at 682.

Defendants fare even worse against Plaintiffs' claim that the EO violates 8 USC § 1401—addressing it only to say they will not address it. Doc. No. 22 at 14 n.4. This independent cause of action is, if anything, even stronger than the constitutional one. Even if Defendants were correct in their unprecedented interpretation of the Citizenship Clause (which they emphatically are not), there is simply no way to contend that anyone held Defendants' views in 1940, when the Clause's language was enacted into statute, or in 1952, when it was re-codified.

This flagrantly unconstitutional Executive Order, which threatens irreparable harm to Plaintiffs and thousands of others, should be declared invalid and its implementation enjoined

1

nationwide. Despite Defendants' protestations, a nationwide injunction is both fully within the Court's power to adopt, *see Trump v. Int'l Refugee Assistance Project* ("*IRAP*"), 582 U.S. 571 (2017), and necessary in light of the sweeping and unprecedented nature of the EO.

**I. Plaintiffs Are Likely To Succeed On The Merits.**

Plaintiffs are highly likely to succeed on the merits, "the most important factor" in the preliminary injunction analysis. *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006).

***Citizenship Clause***.[1] The Citizenship Clause of the Fourteenth Amendment bestows American citizenship upon all people born in the United States so long as they are "subject to" U.S. "jurisdiction" at the time of birth. U.S. CONST. amend. XIV, § 1. As Plaintiffs outlined in their opening brief, *see* Doc. No. 11 at 11-15, with reference to both history and precedent, "jurisdiction" refers to the United States' sovereign lawmaking authority; therefore, anyone without some kind of immunity from U.S. law at birth is a birthright citizen. The Supreme Court and the First Circuit have steadfastly recognized birthright citizenship consistent with Plaintiffs' position.[2] Consequently, the EO is facially illegal because it purports to make birthright citizenship

---

[1] Defendants claim that "the Constitution does not generally provide a cause of action to pursue affirmative relief." Doc. No. 22 at 13 (citing *DeVillier v. Texas*, 601 U.S. 285, 291 (2024)). Whatever the relevance of such a statement in the context of a damages action under the Takings Clause (as *DeVillier* was), it is clearly not correct as a general matter. The Supreme Court has decided scores of affirmative constitutional cases against federal officials, including under the Citizenship Clause. *See*, *e.g.*, *Afroyim v. Rusk*, 387 U.S. 253 (1967); *Davis v. Passman*, 442 U.S. 228, 242-244 (1979); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 116 (1976); *Fullilove v. Klutznick*, 448 U.S. 448, 455 (1980); *Washington v. Davis*, 426 U.S. 229, 248 (1976).

[2] *See*, *e.g.*, *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 73 (1957) (despite "illegal presence" of parents, child born in United States "is, of course, an American citizen by birth"); *Mariko v. Holder*, 632 F.3d 1, 3, 8 n.4 (1st Cir. 2011) (reaching similar conclusion); *Hasan v. Holder*, 673 F.3d 26, 28 n.1 (1st Cir. 2012) (same).

dependent on a factor that has no bearing on the applicability of U.S. law to a person born in the United States: the immigration status of that person's parents.

Placing great weight on the Supreme Court's decision in *Elk v. Wilkins*, Defendants attempt to impose various additional qualifications, *e.g.*, that the duty to obey U.S. laws must be "unqualified by an allegiance to any other foreign power" and that "'[n]o one can become a citizen of a nation without its consent.'" Doc. No. 22 at 2 (quoting *Elk*, 112 U.S. at 103). But Defendants' notion that birthright citizenship requires both "unqualified" allegiance to the U.S and explicit sovereign "consent" cannot be squared with binding precedent. It directly contravenes the principles stated in *Wong Kim Ark* and relies on a fundamental misreading of *Elk*.

In *Wong Kim Ark*, the government pressed virtually the same theory of citizenship as Defendants do here, contending that the plaintiff—who was born in San Francisco—could not be a citizen because his parents were subject to a foreign power. It argued that "Wong Kim Ark, though born within the United States, was not born subject to the political jurisdiction of the general government, for the reason that his father and mother were and are Chinese subjects." *In re Wong Kim Ark*, 71 F. 382, 383 (N.D. Cal. 1896), *aff'd sub nom. United States v. Wong Kim Ark*, 169 U.S. 649 (1898). But, in holding that Wong was a citizen, the Supreme Court squarely rejected the notion that parental relationships to foreign powers matter under the Citizenship Clause. *See Wong Kim Ark*, 169 U.S. at 682-693.³ The Court elaborated that the Clause "was not intended to impose any new restrictions on citizenship" but rather to codify the pre-existing "exceptions to the

---

³ The Court noted that "[c]itizenship by birth is established by the mere fact of birth under the circumstances defined in the constitution. Every person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States. . ." and "[n]o one doubts that [the 14th amendment] . . . applied to persons of African descent born in the United States, wherever the birthplace of their parents might have been. . . ." *Wong Kim Ark*, 169 U.S. at 702-703.

fundamental rule of citizenship by birth within the country" including those recognized at common law, *i.e.*, the children of diplomats and foreign soldiers in occupation, as well as the children of Native Americans, "standing in a peculiar relation to the national government." *Id.* at 682.[4]

Defendants' reliance on *Elk* is misplaced. The *Wong Kim Ark* Court explicitly cabined *Elk* to its facts, stating that the case "concerned only members of the Indian tribes within the United States, *and had no tendency to deny citizenship to children born in the United States of foreign parents* of Caucasian, African, or Mongolian descent, not in the diplomatic service of a foreign country." 169 U.S. at 682 (emphasis added). Moreover, *Elk*'s analysis supports the longstanding definition of "subject to the jurisdiction" that Plaintiffs reiterate here. In explaining why Native Americans did not meet this definition, the Court noted that at the time they could not be taxed by state or federal governments, that "General acts of Congress did not apply to them", and that they were "no more … subject to [U.S.] jurisdiction" than the children "of ambassadors." *Id.* at 99-100, 102. Finally, while Defendants point to *Elk* for the proposition that citizenship depends on the "consent" of the sovereign, *Elk* only discusses such consent as being relevant to *naturalization*, not birthright citizenship under the Citizenship Clause. *See id.* at 103-109. Put simply, Defendants' narrow theory of citizenship finds no support in these precedents.[5]

---

[4] Defendants list the exceptions that *Wong Kim Ark* found to be codified in the Citizenship Clause and state that the EO "recognizes *an additional category* of persons not subject to the jurisdiction of the United States: children born in the United States to foreign parents whose presence is either unlawful or lawful but temporary." Doc. No. 22 at 15 (emphasis added). This is a tacit admission that the EO is illegal, given the Court's explicit finding that the Citizenship Clause created no "new restrictions" on citizenship. *Wong Kim Ark*, 169 U.S. at 682.

[5] Nor can Defendants find support for their consensual theory of birthright citizenship in *Schooner Exchange v. McFaddon*. In their Opposition, they cite *Schooner Exchange* as "explaining a nation's 'jurisdiction … must be traced up to the consent of the nation itself.'" Doc. No. 22 at 17 (quoting 11 U.S. 116, 136 (1812)). However, that case makes clear that the nation's jurisdiction is "necessarily exclusive and absolute" over those within its territory and that any "*exceptions*" from this "full and complete power"—not the applicability of the power itself—require the nation's consent. 11 U.S. at 136 (emphasis added).

4

Defendants argue that Plaintiffs' definition of "jurisdiction" fails to explain the major exceptions to the general rule of territorial birthright citizenship as codified in the Citizenship Clause. Here too they are wrong. Defendants claim that Plaintiffs' definition cannot account for the exclusions of: Native Americans, who "are plainly subject to" federal regulatory power; and diplomats, whose "immunity" Congress can "abrogate." Doc No. 22 at 16. These assertions miss the point. As the *Wong Kim Ark* Court described, at the time of the Fourteenth Amendment's passage, Native American tribes were quasi-sovereign "alien nations," exempt from U.S. law in numerous, well-understood ways. *See supra* at 4.[6] And Defendants' own argument concedes that diplomats have "traditionally enjoyed immunity" from American law. Doc. No. 22 at 16. Plaintiffs' definition of citizenship thus precisely encompasses the exceptions outlined in *Wong Kim Ark*.[7]

Defendants' argument that children born in the United States to non-citizen parents only become citizens if their parents were domiciled in the United States at the time of birth is both incompatible with the case law and unsupported by the authorities Defendants cite. It has long been held that children born in the United States to non-citizen parents who were in the country only temporarily are U.S. citizens. *See Lynch v. Clarke*, 1 Sand. Ch. 583, 663 (N.Y. Ch. Ct. Jan. 1, 1884); *see also In re Look Tin Sang*, 21 F. 905, 909 (D. Cal. 1884) (Field, J.) (explaining that

---

[6] For example, federal criminal law did not apply to crimes committed by Native Americans against each other, Native Americans could not be arrested by states for crimes committed off tribal land, and Native Americans were exempt from civil jurisdiction in federal court. *See* Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 GEO. L.J. 405, 442-444 (2020) (discussing examples); Matthew Ing, *Birthright Citizenship, Illegal Aliens, and the Original Meaning of the Citizenship Clause*, 45 AKRON L. REV. 719, 730-731 (2012) (same); Garrett Epps, *The Citizenship Clause: A "Legislative History,"* 60 AM. U. L. REV. 331, 365-370 (2010) (same).

[7] Defendants attempt to dismiss the in-depth reasoning in *Wong Kim Ark* as dicta. *See* Doc. No. 22 at 30-33. But "considered dicta" from the Supreme Court is binding. *See United Nurses & Allied Professionals v. National Labor Relations Board*, 975 F.3d 34, 40 (1st Cir. 2020). Indeed, numerous courts, including the Supreme Court, have rejected previous attempts to characterize passages of *Wong Kim Ark* as nonbinding dicta. *See Afroyim*, 387 U.S. at 266 n.22; *Wong v. Dulles*, 236 F.2d 622, 625 (9th Cir. 1956); *Buckley v. McDonald*, 84 P. 1114, 1115 (Mont. 1906).

5

"[i]ndependently of the constitutional provision, it has always been the doctrine of this country, … that birth within the dominions and jurisdiction of the United States of itself creates citizenship" and examining *Lynch* decision); *Ex Parte Chin King*, 35 F. 354, 355-56 (D. Or. 1888) (similar).[8] And Defendants' extensive reliance on cherry-picked quotes from the congressional debates, *see* Doc. No. 22 at 23-24, is similarly flawed.[9]

**INA – 8 U.S.C. § 1401**.  8 U.S.C. § 1401 states: "The following shall be nationals and citizens of the United States at birth: (a) a person born in the United States, and subject to the jurisdiction thereof…." This statute, mirroring the language of the Citizenship Clause, was enacted in 1940 and re-codified in 1952 as part of the Immigration and Nationality Act (INA).[10] The EO violates this law as well.

Defendants address this cause of action in a footnote, claiming only that Plaintiffs "recognize that their statutory claim rises and falls with their constitutional claim…." Doc. No. 22 at 14 n.4. Not so. The two certainly rise together—in that they are both indisputably correct. But even if Defendants' unprecedented constitutional interpretation were accepted (which it should not be), Plaintiffs would still prevail on their statutory claim. "It's a fundamental canon of statutory

---

[8] Defendants misleadingly cite a selected snippet of Justice Story's Commentaries in which the Justice states that it would be "reasonable" to exclude the children of temporary visitors from birthright citizenship. *See* Doc. No. 22 at 23. They fail to acknowledge that in the sentence following the quoted portion, Justice Story concedes that the "reasonable qualification" he was offering was ***not*** one of the narrow and established exceptions to *jus soli*. *See* Joseph Story, *Commentaries on the Conflict of Laws* § 48, at 48 (1834) ("It would be difficult, however, to assert, that in the present state of public law such a qualification is universally established.").

[9] *See* Ramsey, *supra* note 6 at 447-454 (extensively examining these debates and explaining why statements of the type relied upon by Defendants "are at best ambiguous"); Epps, *supra* note 6 at 355-362 (surveying debates and concluding that "the evidence more readily supports the broad reading of the [Citizenship] Clause than the restrictive one").

[10] *See* U.S. Dep't of State, Foreign Affairs Manual, 8 FAM 301.6-2 (text of Section 201 Nationality Act of 1940), *available at* https://fam.state.gov/fam/08fam/08fam030106.html*;* Immigration and Nationality Act of 1952, ch. 477, title III, ch. 1, § 301, 66 Stat. 235 (1952). *See also* S. Rep. No. 82-1137, at 38 (1952).

construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) (cleaned up). And Defendants do not even attempt to argue that anyone ascribed to their novel interpretation of the Citizenship Clause in 1940 or 1952. Indeed, all evidence is to the contrary. Court cases then (as now) routinely held that the Clause means that anyone born on U.S. soil is an American citizen, save only for rare exceptions like the children of diplomats.[11]

*APA*. The APA provides a third independent ground for relief. Although Defendants argue that there is no final agency action for this Court to review, *see* Doc. No. 22 at 11, the Supreme Court has repeatedly emphasized "the 'pragmatic' approach we have long taken to finality." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016) (citing *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). The EO announces in no uncertain terms who is no longer to be considered a citizen, EO § 1; declares that it is the policy of the United States that no federal agency may issue documents recognizing U.S. citizenship to such individuals, EO § 2; and bars any agency action inconsistent with this policy. EO § 3. It is "quite clearly definitive," not "tentative," and states "that compliance [is] expected." *Abbot*, 387 U.S. at 151. Under any pragmatic analysis, it is reviewable under the APA.[12]

---

[11] *See*, *e.g.*, *Hintopoulos*, 353 U.S. at 73 (declaring that child born in United States to non-citizen parents who were illegally present "is, of course, an American citizen by birth"); *Kawakita v. United States*, 343 U.S. 717, 720 (1952) ("Petitioner was born in this country in 1921 of Japanese parents who were citizens of Japan. He was thus a citizen of the United States by birth"); *Hirabayashi v. United States*, 320 U.S. 81, 96 (1943) (describing population of those of Japanese descent and noting "approximately two-thirds are citizens because born in the United States"); *see also Dos Reis ex rel. Camara v. Nicolls*, 161 F.2d 860 (1st Cir. 1947); *Nieto v. McGrath*, 108 F. Supp. 150, 151 (S.D. Tex. 1951); *In re Gogal*, 75 F. Supp. 268, 271 (W.D. Pa. 1947); *Regan v. King*, 49 F. Supp. 222, 223 (N.D. Cal. 1942)*, aff'd* 134 F.2d 413, 413 (9th Cir.) (en banc), *cert. denied,* 319 U.S. 753 (1943); *Perkins v. Elg*, 99 F.2d 408, 411 (D.C. Cir. 1938), *aff'd* 307 U.S. 325, 328-29 (1939); *Ex Parte Lopez*, 6 F. Supp. 342, 343 (S.D. Tex. 1934).

[12] "Nonstatutory" judicial review is also available. *Rhode Island Dep't of Env't Mgmt.*, 304 F.3d 31, 40-43 (1st Cir. 2002).

7

Defendants next attempt to defeat the APA's "central purpose of providing a broad spectrum of judicial review," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988), by arguing that everyone stripped of citizenship by the EO must instead institute an individual administrative action after the harm has occurred. Doc. No. 22 at 12 (citing 8 U.S.C. §1503(a)). To state the argument is to refute it. It runs directly counter to the APA's main goal of enabling broad judicial review, as well as the long line of cases holding that alternative procedures that offer "doubtful and limited relief" cannot cut off judicial review under the APA. *Bowen*, 487 U.S. at 901 ("[t]he legislative material elucidating [the APA] manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting [its] generous review provisions must be given a hospitable interpretation.") (internal quotations omitted).[13] The APA is a proper vehicle for Plaintiffs to seek judicial review of the unlawful EO.

## II. The Balance Of Equities Tip Sharply In Plaintiffs' Favor.

The equities present Defendants with an equally impossible task. They must face Supreme Court precedent holding that stripping someone of their citizenship "amounts to the total destruction of the individual's status in organized society," *Trop v. Dulles*, 356 U.S. 86, 101 (1958), yet somehow argue that it should be allowed anyway, rather than a preliminary injunction to preserve the *status quo* that has existed in this country for generations. Defendants cannot surmount this bar. Misciting the standard for a preliminary injunction, Defendants argue that because the EO does not mandate "with certainty" that any particular baby will be de-naturalized,

---

[13] *See also Centro Presente v. U.S. Dep't. of Homeland Security*, 332 F. Supp. 3d 393, 407-08 (D. Mass 2018) (rejecting argument that individual removal proceedings are an adequate alternative remedy in challenge to federal officials' process of terminating Temporary Protected Status designation for entire countries); *cf. Rusk v. Cort*, 369 U.S. 367 (1962) (holding that parallel statute to 8 U.S.C. §1503(a), available to individuals outside the United States, is not the exclusive means of asserting citizenship).

the effect of the EO is too speculative. Doc. No. 22 at 36. Yet by its sweeping terms, there is no doubt that the EO will harm many of Plaintiffs' members. *See*, *e.g.*, Doc. No. 11-2, ¶¶ 9-10 (Vega Declaration); Doc. No. 11-3, ¶¶ 2, 9-10 (Reason Declaration). Plaintiffs need not outline every way in which stripping children of citizenship will harm them; the very act of de-naturalization is "a form of punishment more primitive than torture…." *Trop*, 356 U.S. at 101.

### III. A Nationwide Injunction Is Necessary And Appropriate.

Should the Court find that Plaintiffs have established the elements necessary for a preliminary injunction, the appropriate remedy would be to enter an order declaring that the EO is unconstitutional and enjoining its enforcement nationwide.

As the Supreme Court has emphasized, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *IRAP*, 582 U.S. at 579–80 (2017); *see also Brown v. Plata*, 563 U.S. 493, 538, (2011) ("Once invoked, the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies.") (internal quotation marks and citations deleted). In *IRAP*, individuals and membership organizations sued the President and various federal agencies and officials, challenging an Executive Order barring travel into the United States from six predominantly Muslim countries. 582 U.S. at 572. The district court issued a nationwide injunction based on First Amendment grounds, and the Fourth Circuit affirmed.[14] Defendants then petitioned the Supreme Court for a stay of the nationwide injunction, where the case was joined with a similar challenge brought by the State of Hawaii. *See IRAP*, 582

---

[14] The Fourth Circuit removed the President himself from the injunction but otherwise upheld the district court's injunction. *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir.), *as amended* (May 31, 2017), *as amended* (June 15, 2017), *vacated and remanded sub nom*. *Trump v. Int'l Refugee Assistance*, 583 U.S. 912 (2017).

U.S. at 581. As the Court characterized the scope of the orders under review, "the [lower] courts approved injunctions that covered not just respondents, but parties similarly situated to them—that is, people or entities in the United States who have relationships with foreign nationals abroad, and whose rights might be affected if those foreign nationals were excluded." *Id*. While modifying the injunction to exclude foreign nationals abroad with no connection to the United States, the Supreme Court maintained its nationwide scope. *See id*. ("this means that § 2(c) may not be enforced against foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the United States.").[15]

The similarities with this case are striking: both are challenges to an Executive Order brought by affected individuals and organizations. Both implicate immigration matters, where nationwide consistency is of paramount importance.[16] And among the harms created by both are those that emanate from being labelled by the government as a second-class citizen.[17]

For the foregoing reasons, the EO should be declared invalid and enjoined.

---

[15] When the Executive Order subsequently expired by its own terms, the Court vacated the judgment below and remanded with instructions to dismiss as moot. *IRAP*, 583 U.S. 912.

[16] *See* U.S. CONST., art. 1, § 8, Clause 4 (granting Congress power "[t]o establish an uniform Rule of Naturalization"); *Texas v. United States*, 809 F.3d 134, 187–88 (5th Cir. 2015) (holding that the "Constitution vests the District Court with 'the judicial Power of the United States,' " which "extends across the country" (quoting U.S. CONST., art. III § 1)), *aff'd by an equally divided court*, 579 U.S. 547 (2016).

[17] *Compare* Doc. No. 11-2, ¶¶ 13-14 (Vega Dec.), Doc. No. 11-3, ¶¶ 8-10 (Reason Dec.) (describing dignitary harms) *with Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 604-05 (4th Cir.) (same), *as amended* (May 31, 2017), *as amended* (June 15, 2017), *vacated and remanded sub nom. Trump v. Int'l Refugee Assistance*, 583 U.S. 912 (2017). Nationwide relief under the APA is also appropriate. *See* 5 U.S.C. § 706 (reviewing court shall "hold unlawful and set aside agency action" found to be unlawful). An order "setting aside" unlawful agency action by its nature applies nationwide. *See Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989); *Massachusetts Fair Housing Center et al. v. U.S. Dep't of Housing and Urban Development*, 496 F. Supp. 3d 600, 611-12 (D. Mass. 2020).

Dated: February 4, 2025

Respectfully submitted,

*/s/ Oren Sellstrom*
Oren Sellstrom (BBO #569045)
Iván Espinoza-Madrigal (BBO # 708080)
Jacob Love (BBO #699613)
Mirian Albert (BBO #710093)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
osellstrom@lawyersforcivilrights.org
iespinoza@lawyersforcivilrights.org
jlove@lawyersforcivilrights.org
malbert@lawyersforcivilrights.org
Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 4, 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by email to all parties by operation of this Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.


Dated: February 4, 2025

/s/ *Oren Sellstrom*           
Oren Sellstrom (BBO #569045)