# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **O. DOE,** et al. *Plaintiffs*, v. **DONALD J. TRUMP,** In his official capacity as President of the United States, et al., *Defendant*. | Case No.: 1:25-cv-10135-LTS<br><br>Honorable Leo T. Sorokin |

## [PROPOSED] AMICUS CURIAE BRIEF OF FORMER UNITED STATES ATTORNEY GENERAL EDWIN MEESE III IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Frank L. McNamara Jr.,Esq.
McNamara & Associates
53 Wilder Road
Bolton, MA 01740
Tel: (978) 333-9608
franklmcnamara@gmail.com

Maureen Riordan
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
Tel: (703) 745-5870
mriordan@PublicInterestLegal.org

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i
TABLE OF AUTHORITIES ........................................................................................ ii
INTERESTS OF AMICUS CURIAE ............................................................................1
SUMMARY OF ARGUMENT ......................................................................................2
ARGUMENT ...................................................................................................................2
    I. The Executive Order More Closely Adheres to the Original Meaning of the Citizenship Clause of the Fourteenth Amendment. ........................................................................2
    A.  The Civil Rights Act of 1866 Clarifies the Intent of the Citizenship Clause ..........3
    B.  Legislative Debates Demonstrate That Birthright Citizenship Was Not Universal 5
    II. Birthright Citizenship Requires Full Political Jurisdiction. .....................................8
    A.  Territorial vs. Political Jurisdiction..........................................................................8
    B.  Historical Exclusion from Birthright Citizenship ...................................................10
    III. Supreme Court Precedent Does Not Support Universal Birthright Citizenship. ...11
    A.  *The Slaughterhouse Cases* and *Elk v. Wilkins* .........................................................12
    B.  Misinterpretation of *United States v. Wong Kim Ark* .............................................13
    C.  Historical and Legal Consensus Post-Wong Kim Ark. .........................................15
    IV. The Executive Order Preserves the Integrity of American       Citizenship ........16
CONCLUSION.................................................................................................................18
CERTIFICATE OF SERVICE .........................................................................................20

# TABLE OF AUTHORITIES

*Cases*
*United States v. Wong Kim Ark,* 169 U.S. 649 (1898)..................................................12,14, 15
*Elk v. Wilkins*, 112 U.S. 94 (1884)..............................................................................9,10, 12
*The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1872)...........................................12,18, 19

**United States Constitution**
U.S. CONST. amend. XIV, § 1................................................................................3, 18

*Statutes*
Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227. .......................10
Civil Rights Act of 1866, ch. 31, 14 Stat. 27 (1866) ......................................................3,4,8, 18

*Other Authorities*
Congressional Globe, 39th Cong., 1st Sess., 2890 (May 30, 1866) ............................... 4,5,6, 8

Exec. Order No. 14160, Protecting the Meaning and Value of American Citizenship (Jan. 20, 2025) ................................................................................................................ 1,2, 16

Richard W. Flournoy, Jr., Dual Nationality and Election, 30 Yale L. J. 545, 552 (1921) ....... 6

Jon Freer, *Birthright Citizenship in the United States: A Global Comparison*, CENTER FOR IMMIGRATION STUDIES, https://cis.org/Report/Birthright-Citizenship-United-States. 18, 19

Amy Swearer, The Citizenship Clause's Original Meaning and What It Means Today, https://www.heritage.org/immigration/report/the-citizenship-clauses-original-meaning-and-what-it-means-today........................................................................................4,6,8,11,15

Amy Swearer, The Political Case for Confining Birthright Citizenship to Its Original Meaning, https://www.heritage.org/the-constitution/report/the-political-case-confining-birthright-citizenship-its-original-meaning ...........................................................................................17

Hans von Spakovsky, Birthright Citizenship, A Fundamental Misunderstanding of the 14th Amendment, https://www.foxnews.com/opinion/birthright-citizenship-a-fundamental-misunderstanding-of-the-14th-amendment. ................................... 5,16

## INTERESTS OF *AMICUS CURIAE*[1]

The Honorable Edwin Meese III, former Attorney General of the United States, submits this amicus curiae brief in support of Executive Order 14160, "Protecting the Meaning and Value of American Citizenship." His experience in shaping and interpreting federal law as the 75th Attorney General of the United States provides him with a unique perspective on the legal and historical foundations of American citizenship.

His extensive work in the Department of Justice and his contributions to constitutional discourse underscore his commitment to ensuring that laws are faithfully applied in accordance with their historical meaning.

Attorney General Meese has been actively involved in legal and policy discussions concerning immigration, national security, and the constitutional structure of government. His scholarship and public service have emphasized the importance of maintaining the constitutional balance of powers, ensuring that executive authority is exercised within its proper scope, and upholding the nation's sovereignty. In submitting this *amicus* brief, Attorney General Meese aims to provide the Court with a perspective grounded in legal history, constitutional originalism, and the principles of self-governance.

## SUMMARY OF ARGUMENT

Executive Order 14160 correctly implements the original meaning of the Fourteenth Amendment's Citizenship Clause. The text and legislative history of the Fourteenth Amendment demonstrate that birthright citizenship was intended to apply only to individuals who are fully

---

[1] *Amicus curiae* notified counsel of record for all of the parties of its intention to file an *amicus* brief. No counsel for a party authored this brief in whole or in part, nor did any person or entity, other than *amicus curiae* and its counsel, make a monetary contribution intended to fund the preparation or submission of this brief.

1

subject to the political jurisdiction of the United States. This excludes children born to parents who are neither citizens nor lawful permanent residents. The Supreme Court's precedents support this interpretation. The government's prior policies reflecting a broader interpretation of birthright citizenship, even if longstanding and commonly accepted, are inconsistent with the Constitution's text and original meaning. Upholding the Executive Order would reinforce the importance of American citizenship and prevent further erosion of the political and legal principles enshrined in the Fourteenth Amendment.

**ARGUMENT**

**I.	The Executive Order Adheres to the Original Meaning of the Citizenship Clause of the Fourteenth Amendment.**

The Citizenship Clause of the Fourteenth Amendment states: "All persons born…in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. CONST. amend. XIV, § 1. This language guarantees citizenship only to individuals "subject to the jurisdiction" of the United States—those who owe political allegiance to the United States of America. The framers of the Fourteenth Amendment intentionally included the qualifying phrase "subject to the jurisdiction thereof" to limit the scope of birthright citizenship. This careful wording reflects the framers' intention to distinguish between individuals who merely reside in the United States and those who are fully integrated into the nation's political and legal framework.

**A.	The Civil Rights Act of 1866 Clarifies the Intent of the Citizenship Clause.**

The Citizenship Clause was drafted to constitutionalize the Civil Rights Act of 1866, which provided that "all persons born in the United States, and not subject to any foreign power," are citizens. Civil Rights Act of 1866, ch. 31, 14 Stat. 27 (1866). The Act explicitly

excluded individuals who owed allegiance to a foreign power, such as children of diplomats or triably affiliated Native Americans. By incorporating this language into the Constitution, Congress sought to ensure that citizenship would be reserved for those who had a meaningful and permanent connection to the United States. Congress specifically considered (and outright rejected) the idea that it could or should make citizens of the U.S.-born children of "persons temporarily resident in it" who only owe a qualified or minimal allegiance. Congressional Globe, 39th Cong., 1st Sess. 572 (1866) (statement of Sen. Trumbull).

The framers of the Fourteenth Amendment understood that the Civil Rights Act's definition of citizenship was not universally applicable and intentionally preserved these limitations in the constitutional text. *See* Swearer, *The Citizenship Clause's Original Meaning and What It Means Today*, HERITAGE FOUNDATION, https://www.heritage.org/immigration/report/the-citizenship-clauses-original-meaning-and-what-it-means-today.

The Civil Rights Act of 1866 was drafted to address the status of newly freed slaves and ensure that they received the full rights of American citizenship. *Id.* at ¶ 10. In addition to acting as an enforcement mechanism for the Thirteenth Amendment, "the act served as Congress's first effort to undo Dred Scott." *Id.*

Senator Lyman Trumbull, also a sponsor of the Civil Rights Act of 1866, emphasized that the phrase in the Fourteenth Amendment legislation "not subject to any foreign power" was crucial in defining who was entitled to birthright citizenship. This phrase was meant to exclude individuals who, in contrast to the U.S.-born descendants of African slaves, retained meaningful political allegiance to another sovereign entity. Trumbull explained that "subject to the jurisdiction" meant "not owning allegiance to anyone else." Congressional Globe, 39th Cong.,

1st Sess., 2893 (May 30, 1866). Senator Jacob Howard who introduced the very language of the jurisdiction clause of the Fourteenth Amendment on the Senate floor said it should be construed to mean "a full and complete jurisdiction," "the same jurisdiction that in extent and quality as applies to every citizen of the United States now." Congressional Globe, 39th Cong., 1st Sess., 2890 (May 30, 1866).

This limiting approach was consistent with existing legal principles governing nationality and allegiance. *Id.* The framers understood that political jurisdiction—not mere territorial presence—was the determining factor in conferring citizenship. *Id* at ¶ 6.

### B. Legislative Debates Demonstrate That Birthright Citizenship Was Not Universal.

The legislative debates surrounding the Fourteenth Amendment confirm that Congress did not intend to grant citizenship to anyone simply because they were born on American soil. Lawmakers emphasized the importance of ensuring that citizenship would be conferred only on individuals who, irrespective of their race, were fully subject to the political jurisdiction of the United States. For example, Senator Lyman Trumbull, a key architect of the Amendment, explained that "subject to the jurisdiction thereof" meant "not owing allegiance to anybody else." Hans von Spakovsky, *supra, at* ¶ 5. Similarly, Senator Jacob Howard, a proponent of the Fourteenth Amendments stated that the clause would exclude "persons born in the United States who are foreigners, aliens, who belong to the families of ambassadors or foreign ministers." Cong. Globe, 39th Cong., 1st Sess. 2890 (1866) (statement of Sen. Howard). Without question, the authors of the Fourteenth Amendment, believed the grant of citizenship at birth had limits. The question before this court is not whether limits exist to birthright citizenship, but rather how far the limits extend.

The debates in Congress surrounding the Fourteenth Amendment also reveal a broad consensus that the jurisdiction requirement was meant to reach transient populations and individuals whose legal ties to the United States were tenuous. These limits not only included children of foreign diplomats, members of Native American tribes (who at the time were considered to be under the jurisdiction of their sovereign tribal governments), but also, children of foreign nationals who were present in the United States without lawful status. As one scholar writing two decades after *Wong Kim Ark* conceded, the Court had not decided the issue of citizenship for U.S.-born children of "sojourners or transients in this country" and such a grant of citizenship would be at odds with the conclusions of renowned scholars. Swearer, *supra,* at ¶ 72 (citing Richard W. Flournoy, Jr., Dual Nationality and Election, 30 Yale L. J. 545, 552 (1921)).

Congress's deliberate exclusion of certain groups from birthright citizenship reflected their understanding of jurisdiction. The framers recognized that "territorial" jurisdiction—the obligation to obey American laws while present in the United States —was insufficient to confer citizenship. Instead, they focused on "political" jurisdiction, which requires a complete and enduring allegiance to the United States. *Id.* at ¶ 45. This distinction between territorial jurisdiction and political jurisdiction is critical to understanding the original meaning of the Citizenship Clause and its application to modern questions of birthright citizenship.

The principle of allegiance as a prerequisite for citizenship was a well-established concept in 19th-century legal thought. The framers of the Fourteenth Amendment were well aware of these legal traditions and crafted the Citizenship Clause to reflect this fundamental principle. Their intent was to prevent the automatic grant of citizenship to individuals who lacked the requisite allegiance to the United States.

5

This historical context supports the Executive Order. The framers' intent was clear: citizenship should be granted only to individuals who are fully and exclusively subject to the political jurisdiction of the United States.

## II. Birthright Citizenship Requires Full Political Jurisdiction.

### A. Territorial vs. Political Jurisdiction

Proponents of universal birthright citizenship often conflate territorial jurisdiction with political jurisdiction. Territorial jurisdiction refers to the authority of a government to enforce its laws within its borders, which applies to all individuals present in the country, including foreign nationals. Political jurisdiction, on the other hand, requires a deeper connection to the nation - an allegiance that signifies full membership in the political community. The framers of the Fourteenth Amendment understood this distinction and intentionally limited the Citizenship Clause to individuals who were fully subject to the United States' political jurisdiction. *See* Swearer, *supra*.

The distinction between territorial and political jurisdiction is deeply rooted in American legal history. As Senator Lyman Trumbull explained during the debates on the Fourteenth Amendment, the term "subject to the jurisdiction thereof" was intended to exclude individuals who owed allegiance to another sovereign power. Cong. Globe, 39th Cong., 1st Sess. 2890 (1866) (statement of Sen. Howard). This principle was reflected in the Civil Rights Act of 1866, which granted citizenship only to individuals "not subject to any foreign power." Civil Rights Act of 1866, ch. 31, 14 Stat. 27 (1866). This legislative history supports the reading of the

Fourteenth Amendment that mere presence in the United States does not automatically confer citizenship; rather, full political allegiance is required.

Children born to foreign nationals who are in the United States temporarily or unlawfully are not fully subject to the political jurisdiction of the United States. These individuals remain under the jurisdiction of their parents' home countries and owe allegiance to foreign powers. Eventually, they are supposed to depart the United States. As such, they do not meet the constitutional requirements for birthright citizenship. *See* von Spakovsky, *supra*. This interpretation aligns with the original understanding of the Citizenship Clause and ensures that citizenship remains a meaningful and exclusive status.

The Supreme Court has historically recognized the importance of political jurisdiction in determining citizenship. In *Elk v. Wilkins*, the Court ruled that Native Americans born within U.S. territory but owing allegiance to their tribal governments were not automatically granted citizenship under the Fourteenth Amendment. *Elk v. Wilkins*, 112 U.S. 94, 122-23 (1884). This decision reaffirmed that territorial presence alone was insufficient. Full subjection to United States political jurisdiction was necessary. *Id.*

B. **Historical Exclusion from Birthright Citizenship**

The historical exclusions from birthright citizenship illustrate the importance of political jurisdiction. For example, children of foreign diplomats born in the United States have never been considered United States citizens because they remain subject to the jurisdiction of their home countries. This principle is in both domestic law and international legal norms. For example, under the Vienna Convention on Diplomatic Relations, diplomatic personnel are

7

considered agents of their home countries and are not legally subject to the full jurisdiction of their host nations. Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227.

Similarly, tribally affiliated Native Americans were excluded from birthright citizenship until the passage of the Indian Citizenship Act in 1924. Before this legislation, Native Americans were recognized as members of sovereign tribal nations and not fully subject to United States political jurisdiction. The Supreme Court's ruling in *Elk v. Wilkins* confirmed this principle, holding that Native Americans who maintained tribal ties were not automatically entitled to citizenship. *Elk v. Wilkins*, 112 U.S. at 102. The eventual extension of citizenship through legislative action, rather than constitutional mandate, supports that the Citizenship Clause was not understood to provide absolute birthright citizenship, but instead had limits.

The exclusion of children born to unauthorized aliens is consistent with this historical understanding. Like foreign diplomats and temporary visitors, unauthorized aliens remain subject to the political jurisdiction of their home countries. Their presence in the United States does not signify a complete severance of allegiance to their countries of origin. In fact, allegiance was often by some sovereigns seen as perpetual, meaning that "it could not be discharged without the consent of the sovereign, regardless of whether a person swore allegiance to another sovereign or left the kingdom permanently." Swearer, *supra*, at ¶ 57. As such, their children do not qualify for birthright citizenship under the original meaning of the Fourteenth Amendment.

The historical exclusions from birthright citizenship demonstrate that political jurisdiction is a prerequisite before birthright citizenship may automatically attach.

**III.     Supreme Court Precedent Does Not Support Universal Birthright Citizenship.**

The Supreme Court has never actually interpreted the Citizenship Clause of the Fourteenth Amendment in a manner that supports the notion of universal birthright citizenship

for aliens in the United States without a legal presence. This is commonly misunderstood. Early Court decisions emphasize the importance of political jurisdiction and allegiance, underscoring that mere birth on United States soil does not automatically confer citizenship. While some decisions, particularly *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), are thought by some to support a broader interpretation, a careful examination reveals the question of whether or not to extend citizenship to the children of individuals who are unlawfully present remains decidedly undecided by the Court. The Executive Order more closely aligns with the original meaning of the Citizenship Clause and is consistent with Supreme Court precedent that recognizes the limitations of birthright citizenship.

    A.   **The Slaughterhouse Cases and *Elk v. Wilkins***

The Supreme Court's earliest interpretations of the Citizenship Clause support that birthright citizenship has limits and was never intended to be universal. In *The Slaughter-House Cases*, 83 U.S. 36 (1872), the Court acknowledged that the phrase "subject to the jurisdiction thereof" was a limiting qualifier designed to exclude certain individuals from automatic citizenship. The Court specifically noted that birthright citizenship did not apply to "children of ministers, consuls, and citizens or subjects of foreign States born within the United States." *Id.* at 73.

This textual limit was further explored in *Elk v. Wilkins*. At issue was the question of whether a Native American born within United States territory was a citizen under the Fourteenth Amendment. *Elk v. Wilkins*, 112 U.S. at 98 The Court ruled that Native Americans who maintained allegiance to their tribal nations were not "subject to the jurisdiction" of the United States in the manner required for birthright citizenship. *Id.* at 102. The Court held that a Native American still holding allegiance to the tribe is not automatically a United States citizen.

*Id.* at 109. The Court emphasized that mere territorial presence was insufficient. Rather, full political jurisdiction and allegiance to the United States were necessary prerequisites for citizenship. *Id.* at 101–02.

The reasoning in *Elk v. Wilkins* makes clear that the Citizenship Clause has limits, even for those born on American soil. If one retains allegiance to a sovereign other that the United States, birthright citizenship will not attach.

> B.  **Longstanding Misinterpretation of *Wong Kim Ark***

The conventional wisdom, accepted over decades, is that *Wong Kim Ark* supports absolute birthright citizenship to everyone born in the United States. The holding in this case does not go as far as the conventional wisdom would have you believe.  And no matter how long a mistaken interpretation of a Supreme Court case has been around, its longevity does not make it any less mistaken. This case addressed a specific and narrow legal question: whether a child born in the United States to lawful permanent residents of Chinese descent was entitled to citizenship under the Fourteenth Amendment. It did not, despite the conventional wisdom over decades, reach the question whether children born to parents illegally present in the United States were entitled to citizenship under the Fourteenth Amendment.  Put another way, it did not reach the question of whether those not subject to the political jurisdiction were entitled to birthright citizenship. The Court ruled in favor of Wong Kim Ark, concluding that the children of *lawful permanent residents* who are "domiciled" in the United States are entitled to birthright citizenship. *Id.* at 693.  The case does not stand for the proposition the plaintiffs wish it did.

That is no surprise because the Court's actual decision in *Wong Kim Ark* is consistent with the common understanding of international law and English common law, namely that

10

citizenship to individuals born within the sovereign's territory was limited in scope and not absolute. *Id.* at 655–56.

Critically, *Wong Kim Ark* did not address the question of whether children born to individuals who are unlawfully present in the United States qualify for birthright citizenship, no matter how many newspapers or television reporters say otherwise. The parents of Wong Kim Ark were *lawful* permanent residents, meaning they had a recognized and legitimate presence within the country. *See Wong Kim Ark*, 169 U.S. at 653. The Court's holding was limited to the specific facts of the case and should not be read as extending citizenship to the children of foreign nationals who have no legal status in the United States. Swearer, *supra,* at ¶ 61-66. A mistaken interpretation of a 127-year-old case is still a mistaken interpretation.

C. **Historical and Legal Consensus Post-Wong Kim Ark.**

So where did the mistaken interpretation of the Fourteenth Amendment come from? For decades after *Wong Kim Ark*, the prevailing legal and academic consensus had it correct, that the Citizenship Clause applied only to the children of individuals who were lawfully present and permanently domiciled in the United States. *See* Swearer, supra, at ¶ 66. The federal government long recognized that birthright citizenship was not a blanket entitlement for all individuals born on American soil.

This view remained largely unchallenged until the latter half of the twentieth century, when administrative policy, rather than judicial precedent or constitutional amendment, expanded the practice of granting citizenship to virtually all U.S.-born children. Swearer, *supra,* at 66. It is the executive branch that has misinterpreted the scope of the Fourteenth Amendment and effectuating statutes. The State Department "erroneously interpreted that statute to provide

11

passports to anyone born in the United States, regardless of whether their parents are here illegally and regardless of whether the applicant meets the requirement of being 'subject to the jurisdiction of the United States." *See* Hans von Spakovsky, *supra,* at ¶ 12. And thus the conventional wisdom that anyone born in the United States is a citizen was born. "Accordingly, birthright citizenship has been implemented by executive fiat, not because it is required by federal law or the Constitution." *Id.*

Legal scholars and jurists have continued to challenge this mistaken and overbroad interpretation of *Wong Kim Ark*, arguing that it represents a departure from the original meaning of the Fourteenth Amendment. *See* Hans Von Spakovsky, *Supra*. The current practice of granting automatic citizenship to the children of individuals who are unlawfully present in the United States is inconsistent with both the historical understanding of the Citizenship Clause and the Supreme Court's jurisprudence.

**IV.     The Executive Order Preserves the Integrity of American Citizenship**

Executive Order 14160 represents a constitutionally grounded step toward restoring the original understanding of the Fourteenth Amendment's Citizenship Clause. By clarifying that birthright citizenship applies only to children born to American citizens and lawful permanent residents, the Executive Order more closely aligns with the original intent of the framers and ensures that citizenship remains a meaningful and exclusive status.

American citizenship is one of the most significant legal and political statuses that the nation confers, entailing not only fundamental rights and privileges but also profound responsibilities and allegiance. The Constitution's careful limitations on birthright citizenship reflect an understanding that citizenship should be reserved for those who have a genuine, enduring, and exclusive connection to the United States that comports with the Constitution.

Extending citizenship to individuals who lack this meaningful connection undermines the principles of sovereignty, national identity, and self-governance.

Unrestricted birthright citizenship has significant consequences for national sovereignty, particularly in the context of immigration policy. An overly broad and mistaken interpretation of the Citizenship Clause has created significant intrusions into American sovereignty. For example, the mistaken interpretation has given rise to "birth tourism," wherein foreign nationals deliberately travel to the United States to give birth so their children can obtain citizenship, despite lacking any genuine connection to the country. *See*, Swearer, The Political Case for Confining Birthright Citizenship to Its Original Meaning, HERITAGE FOUNDATION, https://www.heritage.org/the-constitution/report/the-political-case-confining-birthright-citizenship-its-original-meaning.  Reports indicate that thousands of birth tourists enter the United States annually for this sole purpose. *See* Jon Freer, *Birthright Citizenship in the United States: A Global Comparison*, CENTER FOR IMMIGRATION STUDIES, https://cis.org/Report/Birthright-Citizenship-United-States.

## CONCLUSION

The Constitution's text, structure, and history provide guidance on the scope of birthright citizenship. The Executive Order is more consistent with a correct understanding of the Fourteenth Amendment and affiliated jurisprudence. The Fourteenth Amendment's Citizenship Clause states that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. CONST. amend. XIV, § 1. The phrase "subject to the jurisdiction thereof" must be understood to mean complete political jurisdiction—that is, exclusive allegiance to the United States. This interpretation is consistent

with the language of the Civil Rights Act of 1866, which conferred citizenship only upon those "not subject to any foreign power." 14 Stat. 27.

The Supreme Court's early decisions affirm this understanding. In *The Slaughter-House Cases*, the Court stated that "subject to the jurisdiction thereof" excludes "children of ministers, consuls, and citizens or subjects of foreign states born within the United States." *The Slaughter-House Cases,* at 73.

Beyond its constitutional basis, the Executive Order serves an essential function in preserving the significance of American citizenship. Citizenship entails not only legal rights but also civic duties, such as allegiance to the nation, participation in democratic governance, and adherence to U.S. laws. The automatic granting of citizenship to individuals with no meaningful connection to the country dilutes these responsibilities and weakens the social contract between citizens and their government.

America's grant of citizenship should align more with other nations such as France, Germany, and Japan, that do not grant automatic birthright citizenship. *See* Jon Freer, *Birthright Citizenship in the United States: A Global Comparison*. The current practice of conferring citizenship based solely on birth location is an anomaly that is inconsistent with both historical and global norms. Birthright citizenship to aliens present illegally in the United States has no support in the jurisprudence of the United States Supreme Court. The Executive Order corrects mistakes and reinforces the integrity of American citizenship.

For these reasons, *amicus* respectfully requests that this Court deny the Plaintiffs' request for preliminary injunction.

                                                         Respectfully submitted,

                                                         /s/ Frank L McNamara Jr., Esq.

Frank L. McNamara Jr., Esq.
*Counsel of Record*
McNamara & Associates
53 Wilder Road
Bolton, MA 01740
Tel: (978) 333-9608
franklmcnamara@gmail.com

Maureen Riordan
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
Tel: (703) 745-5870
mriordan@PublicInterestLegal.org

Dated: February 4, 2025

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*Signed under the pains and penalties of perjury.*

Dated: February 4, 2025.

                                                /s/ Frank L. McNamara, Jr., Esq.
                                                Frank L. McNamara, Jr., Esq.
                                                (BBO #339300)
                                                McNamara & Associates
                                                53 Wilder Road
                                                Bolton, MA  01740
                                                Tel: (978) 333-9608
                                                Email: franklmcnamara@gmail.com